## LANGFORD et al. v. OKLAHOMA STATE BANK et al.

No. 14379—Opinion Filed March 17, 1925.

1. **Pleading—Variance—Capacity of Party Suing.**

A petition filed in an action wherein plaintiff's capacity to sue is designated as being that of a trustee is not at variance with proof of a written contract wherein he is designated as owner, where it is also shown that there was a subsequent modification of the written contract by an executed oral agreement between the parties thereto and others, and that pursuant to such modified contract plaintiff became the trustee of such other parties to see that the modified contract was fully performed.

2. **Damages — Penalties and Liquidated Damages—Statute—Determination.**

Where landowners execute commercial leases on approximately 1,000 acres of land to secure a drilling test for oil and gas thereon, and the contractors agree to and do deposit $10,000 to guarantee the drilling of the test to the contract depth, such deposit to be paid pro rata to the landowners in event of a breach of such drilling contract, in an action brought to compel the disbursement of such deposit where the evidence establishes without dispute that there was a breach of such contract and that at the time of its execution similar leases in that vicinity had a commercial value of from $10 to $25 per acre, it will be presumed that such provision of the contract was intended by the parties to represent the damage which the landowners would sustain by its breach under Comp. Stat. 1921, section 5069, and that it is not void as being a penalty under Comp. Stat. 1921, section 5067.

3. **Judgment—Erroneous Entry of Personal Judgment—Liability.**

But in such case, where the verdict of the jury is in favor of the plaintiff and against the depositary and the contractors for the full amount of such deposit, it is erroneous for the court to enter a personal judgment against the contractors, for the reason that their liability under the contract has been fully discharged by the deposit of the $10,000 in cash, and a personal judgment against them for another $10,000 would be imposing a double liability, in excess of the obligation assumed by them and is unauthorized.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by R. O. Ray, trustee, against Oklahoma State Bank. On motion of Oklahoma State Bank, W. S. Langford and James E. Gresham were made parties and intervened in the action. Judgment for plaintiff against defendant and interveners, and interveners bring error. Modified and affirmed.

November 5, 1921, R. O. Ray, trustee, commenced this action in the district court of Tillman county by filing his petition therein in which it was alleged, in substance, that on or about June 14, 1919, the plaintiff, as trustee for certain named persons, entered into a written contract with W. S. Langford and James E. Gresham for the drilling of a well for oil and gas by the said W. S. Langford and James E. Gresham on a location to be selected upon premises covered by said contract. It was further alleged that said work was to be prosecuted continuously until the well should have reached a depth of 3,000 feet unless oil and gas were found in paying quantities at a lesser depth, and as a part of the consideration for said contract it was alleged that the said W. S. Langford

and James E. Gresham agreed to deposit in the Oklahoma State Bank the sum of $10,-000 to guarantee the drilling of said well in accordance with the terms of said contract. The third paragraph of the amended petition reads as follows:

"That at the time said written contract above set forth was entered into, that the leases executed by the different parties for whom this plaintiff was acting as trustee, contained provisions whereby said leases did not become effective until a well for oil and gas had been drilled to a depth of at least 3,000 feet, unless oil and gas in paying quantities was struck at a lesser depth; and plaintiff alleges and states that after said written agreement had been executed, the defendant, the Oklahoma State Bank, represented to this plaintiff personally and as trustee, that the said Oklahoma State Bank had the said $10,000 in its possession and under its absolute control, and that if this plaintiff would secure straight commercial form 88 leases from the parties whom he represented as trustee, that the said Oklahoma State Bank would personally guarantee to pay the $10,000 as provided in said contract to this plaintiff, as trustee, to be divided among the parties whom he represented in proportion as the number of acres contributed by them bore to the whole number of acres. In the event said contract was not complied with, or that said well was not drilled to a depth of 3,000 feet, plaintiff further states that the said defendant, Oklahoma State Bank, made a similar representation, and guarantee to each of the parties whom he represents as trustee herein, and that by virtue of the said representation and guarantee of the defendant, the Oklahoma State Bank, the plaintiff and the parties whom he represents herein caused the original leases signed by them, containing said restrictions above mentioned to be destroyed and executed in lieu thereof straight commercial form leases made direct to W. S. Langford and James E. Gresham, and that the sole and only reason and cause for said new leases being executed was the representation and the guarantee of the Oklahoma State Bank that they would protect this plaintiff in the event said well was not drilled to a depth of 3,000 feet, and would pay them $10,000 should the said W. S. Langford and James E. Gresham fail to drill to said depth."

To this petition the defendant, Oklahoma State Bank, filed its answer, which consisted of a general denial and admissions that it was a banking corporation, and that the sum of $10,000 in cash had been deposited with it by W. S. Langford and James E. Gresham as alleged in plaintiff's petition and for the purposes therein stated. It further alleged that W. S. Langford and James E. Gresham were asserting title to said deposit, disclaimed any interest there-

in for itself, and asserted that it was a mere stakeholder. It asked that the court make an order making W. S. Langford and James E. Gresham parties to the action, and that they be permitted to intervene and set up their claim. The court entered its order making Langford and Gresham parties and permitting them to intervene in the action. Thereupon the interveners filed in said action their plea of intervention, which consisted of a general denial, an admission of the execution of the contract sued on, but denied that R. O. Ray was a trustee and alleged that he was acting for himself in the transaction. It was further alleged that plaintiff was not entitled to recover for the reason that the provision in said contract requiring the deposit of the $10,000 was a penalty clause and contrary to law. It was further alleged that certain fraudulent representations were made by the plaintiff to the interveners to induce the execution of said contract by them. By way of cross-petition interveners asked for damages against the plaintiff by reason of the false and fraudulent representations alleged to have been made.

There was a reply by plaintiff and a replication by the interveners, and upon the issues thus presented the case was tried to the court and jury, and at the conclusion of plaintiff's testimony the interveners demurred to the evidence of the plaintiff, which demurrer was by the court overruled. Thereupon all parties rested the case and on motion of plaintiff the court directed the jury to return a verdict in favor of the plaintiff, which was done and judgment entered in conformity with the verdict. After unsuccessful motion for new trial the interveners have brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff, defendant, and interveners, as they appeared in the trial court.

Weldon & McDonald, Herman S. Davis, P. Mounts, and W. H. Hussey, for plaintiffs in error.

Wilson & Roe, for defendants in error.

Opinion by LOGSDON, C. Interveners present only the first assignment of error in their brief, which is error of the court in overruling the motion of interveners for a new trial. Under this assignment of error they argue three propositions:

"First. There was a complete failure of the plaintiff to introduce proof in support of the allegations of his petition, not in some particulars only, but in the general scope of his alleged cause of action.

"Second. That said contract in so far as it attempted to determine the amount of damages in advance of any breach thereof is void.

'Third. The court erred in directing a verdict against the interveners for the amount of the money in controversy."

Under the first proposition it is urged that under the terms of the contract sued on the plaintiff, R. O. Ray, is specifically designated as the owner of the oil and gas leases described in said contract, and that upon the trial of the case it developed that he owned none of said leases, and that by the terms of the modification of said contract thereafter made by the parties, plaintiff ceased to have any interest individually or as a representative of others in the subject-matter of the action. An examination of the record in this case does not support this contention under the facts shown. It appears from the evidence that certain landowners in Tillman county desired to have a test well put down, and in order to induce some one to make the test they executed leases on their lands and turned the same over to R. O. Ray, for the purpose of entering into negotiations with some one to do the drilling. Ray was selected by them as their trustee for this purpose. He entered into the written contract with Langford and Gresham, but after its execution Gresham and Langford decided that they preferred straight commercial leases instead of those originally executed. Interveners and plaintiff, together with the cashier of the defendant, visited all of the landowners who had signed leases and explained why new forms of leases were required and upon the distinct representation to such landowners by the cashier of the defendant that the money was on deposit in the bank as required by the original contract,- said landowners agreed to execute new leases upon the form required by interveners and expressly agreed among themselves that plaintiff should continue to act as their trustee to see that the terms of the modified contract were fully performed and the $10,000 deposit collected in the event there should be a breach of the contract. It is not considered that any material or fatal variance is shown between the pleading and the proof, nor that there was a failure of proof within the meaning and intent of Comp. Stat. 1921, section 314.

It is insisted under the second proposition that the contract whereby interveners deposited the sum of $10,000 in the defendant bank to be paid to the owners in the event said well was not completed to the contract depth was a provision for a penalty and is unenforceable. In this connection it is disclosed by the record that the acreage embraced in the leases and contract amount to 800 or 1,000 acres. It is further shown that at the time of the execution of the contract lease values in that neighborhood ran from $10 to $25 per acre. The principal, if not the only, inducement which led the landowners to execute the new form of leases and to destroy the old ones, was the assurance given to them by the cashier of defendant that the $10,000 was actually on deposit and that the defendant bank guaranteed the payment of this sum if they would execute the new leases and the interveners should fail to drill the well to the contract depth. Under this state of the record it is considered that the language of Justice Kane, in the case of McAlester v. Williams, 77 Okla. 65, 186 Pac. 461, is applicable when he said:

"We think our statutes which seem to be declaratory of the rule in equity are decisive of the case at bar. Clearly the stipulation or condition in the contract under consideration provides for the payment of an amount which was presumed by the parties to be the amount of damage which would be sustained by one of the parties in case of a breach of such contract by the other party. Unquestionably the obligee would suffer some damage by a breach of this stipulation. Obviously from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. In these circumstances it seems to us that the stipulation involved must be held to be valid by the direct mandate of the statute, and that it falls squarely within the rule laid down in Sun Printing, etc., Ass'n v. Moore, 183 U. S. 642, 47 L. Ed. 366."

Under the third proposition it is urged that the court erred in directing a verdict in favor of the plaintiff and against these interveners and in rendering a personal judgment against said interveners upon said verdict. It is considered that this last contention of interveners should be sustained. Under the third paragraph of plaintiff's amended petition, heretofore quoted, it is apparent that plaintiff relied upon the express guarantee of the defendant bank that it would pay the sum of $10,000 to the plaintiff as trustee for the benefit of the landowners if interveners breached their contract. No recovery of any kind or character was sought against the interveners in plaintiff's original or amended petition, and no allegations were made from which a claim of personal liability on the part of the interveners could be inferred. Touching plaintiff's theory in the filing and presenta-

tion of this action, it is stated on page 2 of his brief:

"But as a matter of fact we did not sue the Oklahoma State Bank for the specific fund deposited by Langford and Gresham, but did sue them for the sum of $10,000 on their guarantee made in connection with the contract between Ray and Gresham and Langford, as later modified when the farmers put up new leases. This is shown by the amended petition of plaintiff."

Plaintiff's sole contention in his brief to sustain the personal judgment rendered against the interveners is that they came into the case and filed a cross-action asking for affirmative relief against the plaintiff, and that they thereby became the principal defendants in the action and liable personally for whatever verdict was recovered by the plaintiff. The record discloses, however, that the order of the court making Langford and Gresham parties directed that they should intervene in the action, and while it is true that their plea of intervention contained a cross-action for damages resulting from alleged fraud of the plaintiff, yet upon the trial this cross-action was abandoned and interveners introduced no evidence whatever in support thereof. The only evidence introduced in the case was that offered by the plaintiff. No contention is made that the sum of $10,000 called for in the contract was not actually deposited by Langford and Gresham in cash in the defendant bank. They had, therefore. performed the contract to its fullest extent in so far as the liability which they were to incur by failing to drill to the contract depth could be compensated for in money. To render a personal judgment against them for an additional $10,000 is to double the liability which they assumed when they executed the contract with the plaintiff. There is no reason or authority to support such a result. It would indeed be a penalty and a severe one under the terms of the contract if they could legally be subjected to a liability in double the amount which they assumed by the execution of the contract.

It is further urged by the plaintiff in support of the judgment that if interveners had not filed a supersedeas bond in this action plaintiff could have withdrawn the $10,000 from the Oklahoma State Bank. It is a sufficient answer to this contention to state that after interveners executed a supersedeas bond ordered by the court in the sum of $20.000, and after the approval and filing of said bond in the trial court, said interveners made application to the court for an order to withdraw said deposit from the

defendant bank during the pendency of this appeal, and that said application was by the trial court denied. Thus the $10,000 which interveners originally deposited to cover their liability under the contract remains beyond their reach while the judgment in the action makes them personally liable for another $10,000 which they never contracted or agreed to pay. Under these circumstances it is considered that the trial court erred as a matter of law in entering a personal judgment against the interveners upon the verdict of the jury. The verdict and judgment against the Oklahoma State Bank, where the $10,000 was actually on deposit, was the limit of plaintiff's right of recovery under his contract.

For the reasons herein stated, it is considered that the judgment of the trial court should be modified so as to eliminate therefrom any personal judgment against the interveners, and as modified the judgment should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 Cyc. p. 707. (2) 17 C. J. p. 957, §255.